IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ELDON K. HURLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DYNO NOBEL, INC. and DYNO NOBEL DEFINED BENEFIT PENSION PLAN I,<br><br>Defendants. | MEMORANDUM<br>DECISION AND ORDER<br><br><br><br>Case No. 2:08-cv-00415-RJS<br><br><br>Judge Robert J. Shelby |

Plaintiffs Eldon K. Hurley, William Popadich, and Steven K. Burgin are participants in the Pension Benefits Plan provided to them by Defendants Dyno Nobel, Inc. and Dyno Nobel Defined Benefit Pension Plan I. Plaintiffs allege that Defendants refused to include as part of the pension benefits calculations for Plaintiffs certain payments that Plaintiffs received in 2005 and 2006. Plaintiffs filed this action alleging that Defendants' conduct (1) violated the terms of the Pension Plan; (2) violated ERISA's anti-cutback provision; (3) violated ERISA's fiduciary duties provision; and (4) gives rise to declaratory and injunctive relief.

Defendants move for summary judgment arguing that all of Plaintiffs' causes of action should be dismissed. (Dkt. 83.) Plaintiffs respond that Defendants denied Plaintiffs access to

information essential to establishing Plaintiffs' claims, and genuine issues of material fact preclude summary judgment for Defendants. Plaintiffs seek a continuance for further discovery under Rule 56(f) of the Federal Rules of Civil Procedure. (Dkt. 89.)

After careful consideration and for the reasons stated, the court DENIES Plaintiffs' motion for Rule 56(f) continuance. (Dkt. 83.) In addition, the court GRANTS Defendants' motion for summary judgment and DISMISSES all claims against Defendants. (Dkt. 89.)

## BACKGROUND

### I. Management Warrants

In August 2000, Dyno Nobel offered certain management employees (including Plaintiffs) stock warrants representing the opportunity to acquire newly issued shares in Dyno Nobel Holding AS. (R. at 1.) These stock warrants (or Management Warrants) were described in the "Management Shareholder's Agreement – Executive Summary". (*Id.*)

In September 2003, Plaintiffs signed an agreement indicating that they wanted to participate in the Management Shareholder's program and to obtain the Management Warrants. (Dyno Nobel Holding AS Management Incentive Programme Participant Agreement and Acknowledgment, R. at 7.) In October 2003, Dyno Nobel Holding AS accepted the agreements and provided Plaintiffs with the Management Warrants. (R. at 7.)

In September 2005, the shareholders of Dyno Nobel Holding AS tentatively agreed to sell all of their shares to Macquarie Bank. (Lunde Letter, Exh. 3, Dkt. 84-1; *see also* First Amended Complaint at ¶26, Dkt. 47.) In preparation for the sale of Dyno Nobel Holding AS to Macquarie Bank, Dyno Nobel sought an opinion from Deloitte Tax LLP regarding the effect of exercising or cancelling the 2003 Dyno Nobel Holding AS Management Warrant Agreements. (R. at 257.) Deloitte advised that "[i]f the Company cancels the outstanding management warrants and pays

out the difference between the warrants' exercise price and the warrant's economic value . . . [this] difference will be reported by Dyno US on the employee (or former employee's) W-2 as ordinary income." (R. at 258.) Around this time, Dyno Nobel decided that in order to simplify the realization of the Management Warrants in relation to the pending sale to Macquarie Bank, Dyno Nobel would offer "the economic value of each Management Warrant held . . . in exchange for the cancellation of the Management Warrants." (Consent Letter and Power of Attorney, Exh. 6, Dkt. 84-1.)

## II. Payments for Cancellation of the Management Warrants

On October 21, 2005, Terrance J. Gleason, vice-president of human resources for Dyno Nobel and Dyno Nobel's Pension Plan administrator, signed and adopted the "Ninth Amendment to the Gust Restatement of the Dyno Nobel Inc. Pension Plan I" on behalf of Dyno Nobel. (R. at 133.) In the Ninth Amendment, Dyno Nobel specifically excluded "any equity-based compensation arrangement" from the definition of compensation under the Pension Plan. (*Id.*) The Ninth Amendment was ratified by the Board of Directors on October 26, 2005. (R. at 238, 243.) The certificate showing that the Ninth Amendment was ratified by the Board of Directors on October 26, 2005 was signed on November 10, 2005. (R. at 243.)

In November 2005, Mr. Hurley entered into a "Waiver of Right to Certain Warrant Payments, Cobra Coverage and/or Severance Payments." Pursuant to this waiver, Mr. Hurley agreed that "rather than exercising the warrants, such warrants would be cancelled and the Executive will be paid a lump sum cash payment [of] approximately $310,024, less any applicable withholding taxes." (*See, e.g.*, R. at 320–323.)

In December 2005, the shareholders of Dyno Nobel sold their shares to Macquarie Bank. (R. at 332.)

**III.    Pension Benefits**

In May 2006, Mr. Gleason informed Plaintiffs that the company had concluded that payments for cancellation of the Management Warrants were not compensation for purposes of calculating pension benefits.  (R. at 341.)  In December 2006, Mr. Hurley asked the pension committee to reconsider that position.  (R. at 343.)

In March 2007, Mr. Gleason informed Mr. Hurley that the Dyno Nobel Pension Plan specifically excluded all equity-based payments from the definition of compensation under the Plan as described in the Ninth Amendment.  (R. at 345–46.)  Mr. Gleason stated that the Ninth Amendment was "adopted effective January 1, 2005" and "was made for the specific purpose of insuring that income from the exercise of stock options and warrants which Dyno had made available only to a limited number of employees would not be treated as pension income. . . . This decision was made both for internal equity and to avoid the issue of enhanced benefits for certain highly compensated employees."  (*Id.*)  In October 2007, Mr. Hurley and other similarly situated employees challenged the company's decision to exclude from the calculation of pension benefits the payments that resulted from cancelling the Management Warrants.  (R. at 287–296.)  In December 2007, the Pension Plan administrative committee at Dyno Nobel reviewed and denied Mr. Hurley's request to include the warrant cancellation payments in pension calculations.  (R. at 351–354.)

Plaintiffs appealed Dyno Nobel's denial in January 2008.  (R. at 357–61.)  Dyno Nobel

reviewed and rejected Plaintiffs' appeal in May 2008. (R. at 373–75).[1]

ANALYSIS

The Defendants move for summary judgment on all four of Plaintiffs' causes of action. (Dkt. 83.) Defendants contend summary judgment is appropriate because (1) the Pension Plan's denial of Mr. Hurley's claim was not an abuse of discretion and the decision was supported by substantial evidence; (2) Plaintiffs improperly argue the applicability of ERISA's anti-kickback claims in Plaintiffs' second and third causes of action; and (3) ERISA bars Plaintiffs' fourth cause of action for equitable relief.

Plaintiffs oppose Defendants' motion, arguing (1) Dyno Nobel has denied the Plaintiffs access to information essential to establishing Plaintiffs' claims, and that summary judgment is premature for that reason; (2) the court should review Plaintiffs' ERISA claims de novo, without any deference to the Pension Plan administrator's decision, and that Plaintiffs' claims survive summary judgment under de novo review; and (3) the Ninth Amendment is ambiguous about the treatment of the Management Warrants, and such ambiguity should be construed in favor of Plaintiffs. Plaintiffs contend that even if this were not true, at a minimum, there are genuine disputes of material fact concerning whether the Ninth Amendment allows the Management Warrants to be excluded from pension calculations.

I.  **Summary Judgment Standard**

Rule 56(a) of the Federal Rules of Civil Procedure states that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

---

[1] Dyno Nobel contends that the allegations in the Complaint pertain only to Mr. Hurley, and not Mr. Popadich or Mr. Burgin, because Mr. Hurley is not similarly situated to Mr. Popadich and Mr. Burgin. Dyno Nobel contends that Mr. Popadich and Mr. Burgin are not proper plaintiffs in this action. But having granted summary judgment for Dyno Nobel, the court need not resolve this issue.

and the movant is entitled to judgment as a matter of law." "A material fact is one that might affect the outcome of the suit under the governing law, and a genuine issue is one for which the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pelt v. Utah*, 539 F.3d 1271, 1280 (10th Cir. 2008) (internal quotations and citations omitted). In making this determination, the court "view[s] the evidence and make[s] all reasonable inferences in the light most favorable to the nonmoving party." *N. Natural Gas Co. v. Nash Oil & Gas, Inc.*, 526 F.3d 626, 629 (10th Cir. 2008).

## II.     Rule 56(f) Motion for Discovery

Plaintiffs first contend that Defendants have denied the Plaintiffs access to information essential to establishing Plaintiffs' claims. Without that discovery, Plaintiffs argue, any decision on summary judgment is premature. Plaintiffs previously made similar discovery arguments in a motion to compel responses to Plaintiffs' discovery requests. (Dkt. 57.) Magistrate Judge Paul M. Warner denied the request. (Dkt. 70.) Plaintiffs appealed the denial, but this court affirmed Judge Warner's decision. (Dkt. 77.) Plaintiffs' Rule 56(f) motion essentially asks the court to revisit Judge Warner's decision a second time. The court declines to do so, and reaffirms Judge Warner's decision to deny Plaintiffs' request for additional discovery.

Accordingly, the court finds that the record is sufficient and adequate for determination of Defendants' summary judgment motion.

## III.    Standard of Review

Plaintiffs next argue that the court should review their claims de novo, without any deference to the Pension Plan administrator's decision. In the Tenth Circuit, "[a] denial of benefits under an ERISA plan 'is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or

to construe the terms of the plan.'" *Kellogg v. Metropolitan Life Ins. Co.*, 549 F.3d 818, 825 (10th Cir. 2008) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If the benefit plan gives the administrator such discretion, then, absent procedural irregularities, the denial of benefits is reviewed under an arbitrary and capricious standard." *Hancock v. Metropolitan Life Ins. Co.*, 590 F.3d 1141, 1146 (10th Cir. 2009).

Here, Sections 13.5(f) and (i) of Dyno Nobel's Pension Plan specifically authorize the Plan administrator "[t]o determine the benefits on which Participants and their Beneficiaries are entitled and to approve or deny claims for benefits;" and "[t]o provide all parties dealing with the Plan with an interpretation of Plan provisions as needed, and in this regard to have complete and total discretion in the interpretation of the Plan." (R. at 70–71.) Section 13.5 clearly authorizes the Plan administrator to determine eligibility for benefits and to construe the terms of the Plan. Under controlling Tenth Circuit law, the court gives deference to the Plan administrator, and reviews the decisions of the administrator under an arbitrary and capricious standard.

Notwithstanding the plain language of Section 13.5(f), Plaintiffs argue that the court should apply de novo review because Plaintiffs have asserted claims not requiring the exhaustion of pre-litigation remedies. Plaintiffs contend this sometimes results in instances where there is no pre-litigation record, in which case it would be inappropriate to give deference to decisions by plan administrators. Plaintiffs also argue Defendants failed to follow ERISA procedures, and that this failure requires the court to review plan decisions de novo.

### A. Exhaustion of Pre-Litigation Remedies

Plaintiffs contend that they have asserted claims not requiring the exhaustion of pre-litigation remedies, which sometimes results in no pre-litigation record. According to Plaintiffs, it would be inappropriate to give deference to plan decisions under such circumstances.

The court can find no legal authority, and the Plaintiffs cite to none, that stands for the proposition that the assertion of claims that do not require exhaustion of pre-litigation appeals compels a court to conduct de novo review. Understandably, in the cases where there is no pre-litigation record, the court must decide some issues de novo. But here, the Plan specifically gives the Plan administrator the authority to determine eligibility for benefits and construe the terms of the Plan. In addition, the Plan administrator rejected Plaintiffs' benefit claims, and the Plan administrator provided a pre-litigation record to support his decision. The court denies Plaintiffs' request for de novo review based on a theory that if exhaustion is not required, then all issues must necessarily be reviewed de novo.

### B. Compliance with ERISA Claims Procedure

Plaintiffs appear to argue that deference is required only if the administrator substantially complied with ERISA procedures. The crux of Plaintiffs' argument is that Defendants failed to comply with ERISA guidelines by failing to produce documents and information.

As stated above, the court has already determined that Defendants have not failed to produce documents and information to which Plaintiffs are entitled. For example, Defendants have disclosed "strictly as a courtesy . . . a copy of redacted minutes of the board of directors meeting at which the Ninth Amendment was adopted." (R. at 369.) In addition, Defendants consistently provided documents or explained why it could not.

The Plaintiffs further argue that the Pension Plan administrator's decision is so conclusory that it does not comply with ERISA procedures. But as discussed below, the court finds that there was a reasonable basis for the administrator's decision, and that the decision was sufficiently supported by facts. The court finds that Defendants substantially complied with ERISA's claim procedures.

## IV. Review of Denials

Applying the standard described above, the court finds that the denial of benefits on the record here presented is reviewed under an arbitrary and capricious standard rather than de novo review. The Tenth Circuit has held that "[i]n determining whether the plan administrator's decision was arbitrary and capricious, the district court generally may consider only the arguments and evidence before the administrator at the time it made that decision." *Sandoval v. Aetna Life & Casualty Ins. Co.*, 967 F.2d 377, 382 (10th Cir. 1992). In addition, "under the arbitrary and capricious standard, the Administrator's decision need not be the only logical one nor even the best one. It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary and capricious." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999) (citing *Woolsey v. Marion Labs, Inc.*, 934 F.2d 1452, 1459 (10th Cir. 1991). Moreover "[t]he decision will be upheld unless it is not grounded on any reasonable basis. The reviewing court 'need only assure that the administrator's decision falls somewhere on a continuum of reasonableness – even if on the low end.'" *Id.* at 1098 (citing *Vega v. National Life Ins. Serv., Inc.*, 188 F.3d 287, 297 (5th Cir. 1999)).

### A. Allegations of the Violation of the Terms of the Plan

Pursuant to 29 U.S.C. § 1132(a)(1)(B), Plaintiffs seek to recover benefits allegedly due to them under the Plan, asserting that Defendants violated the terms of their own Pension Plan. *See*

29 U.S.C. § 1132(a)(1)(B) ("A civil action may be brought by a participant or beneficiary to recover benefits due to him under the terms of the plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]"). Plaintiffs allege Defendants violated the terms of the Plan in the following ways:

1. Defendants refused to include the warrant cancellation payments in the pension benefits calculations;

2. Defendants received and ignored the opinion of expert Deloitte indicating that the payments arising out the cancelled warrants should be reported on the employee's W-2 as compensation income;

3. The Ninth Amendment used by Defendants to support their position was backdated;

4. The bonus payments Plaintiffs received were not "equity-based compensation" and thus not subject to the Ninth Amendment; and

5. ERISA imposes fiduciary duties on Dyno Nobel, and that Dyno Nobel breached those duties.

The court addresses each of these contentions in turn.

### 1. Terms of the Pension Plan

Plaintiffs generally argue that Dyno Nobel's Pension Plan provided that compensation calculations under the Plan should include bonuses. Plaintiffs contend Defendants violated the terms of the Pension Plan by refusing to include the warrant cancellation payments in the pension benefits calculations. In this case however, the administrator provided a reasonable explanation why Defendants excluded from pension calculations the payments resulting from the cancellation of the Management Warrants.

Mr. Gleason explained, "[p]rior to the payments made by Dyno for the cancelled warrants, Dyno determined that the management employees would be receiving substantial additional income due to the transaction and concluded that this income should not also be considered compensation for purposes of any benefits which could become payable under the Dyno Pension Plan." (R. at 352.) Thus, "Dyno adopted an amendment [the Ninth Amendment] to the Dyno Pension Plan to the management employees who exercised or entered into agreements to cancel the stock warrants." (*Id.*) The Ninth Amendment revised the definition of compensation included in pension calculations to exclude "any equity-based compensation arrangement." (R. at 133–134.)

Mr. Gleason further explained that "[t]he clear intention of the Ninth Amendment . . . is to exclude specifically the payments received by the management employees in connection with the exercise or cancellation of the stock warrants they held. . . . As a consequence it would be inappropriate to treat the amounts received by those employees who held stock warrants as compensation under the Dyno Pension Plan." (R. at 353.) Moreover, "the Committee members, several of whom were personally involved in the development and operation of the Management Incentive Plan, as well as the creation and adoption of the Ninth Amendment to the Dyno Pension Plan, relied on and expressed to the Committee their direct knowledge of those events and their understanding of Dyno's intention in the operation of the Incentive Plan and adoption of the Ninth Amendment." (R. at 374.)

It is clear that the Plan administrator interpreted the term "equity-based compensation arrangement" to include all compensation based on cancellation of the Management Warrants because (1) the Ninth Amendment was specifically enacted to exclude the compensation based on cancellation of the Management Warrants; (2) those involved in the development and creation

11

of the Ninth Amendment believed that the language excluded compensation from the cancellation of Management Warrants from the pension calculation; and (3) as compensation from Management Warrants are equity-based compensation, the Plan administrator interpreted equity-based compensation arrangement to include compensation from cancelling the Management Warrants.

In view of this record, the court finds the Plan administrator's interpretation reasonable and sufficiently supported by facts.

### 2. Expert Opinion of Deloitte

Plaintiffs argue that Dyno Nobel solicited expert advice from Deloitte Tax LLP regarding how to treat these cancellation payments, and that Deloitte told Dyno Nobel the income derived from cancellation of the warrants must be treated as regular income. Dyno Nobel initially applied this advice by taking out payroll taxes and 401(k) contributions from warrant cancellation payments. Plaintiffs appear to argue that Defendants subsequent interpretation that these cancellation payments are something other than ordinary income included in pension calculations is impermissible. Or at a minimum, Plaintiffs appear to contend that this subsequent treatment is nefarious enough to justify additional discovery.

But Mr. Gleason addressed this issue, explaining that "[a]pplying generally accepted accounting principles and U.S. tax law does not change the nature of the compensation Mr. Hurly received. The fact that elective deferrals were withheld from those payments and submitted to Dyno's 401(k) plan is also irrelevant. That plan's definition of compensation, including compensation eligible for deferral, is different from that in the Dyno Pension Plan. There was no amendment similar to the Ninth Amendment made to the 401(k) plan, since benefits under the 401(k) plan are determined in a totally different manner." (R. at 375.)

As discussed by Mr. Gleason, the Plaintiffs fail to explain how the tax treatment of the payments from the cancellation of the Management Warrants was meaningful to the determination of whether the cancellation payments were equity-based compensation, and thus excluded from pension calculation under the Ninth Amendment.

The court finds that Deloitte's tax advice does not render the Plan administrator's decision about treatment under the Pension Plan arbitrary and capricious. The administrator's decision is reasonable, and sufficiently supported by facts.

### 3. Ninth Amendment

Plaintiffs allege that Defendants backdated the Ninth Amendment and the Ninth Amendment was actually adopted and ratified in December 2005. Plaintiffs further contend that they made the decision to cancel their warrants and tender bonus payments prior to the date the Ninth Amendment was ratified and adopted by Dyno Nobel. According to Plaintiffs, the Ninth Amendment is not applicable, and should not have been used by the administrator to reject Plaintiffs' claim that the warrant cancellation payments should be used in pension benefit calculations.

The Supreme Court has held that "the mere allegation of some factual dispute will not defeat an otherwise properly supported motion for summary judgment, and a mere scintilla of evidence does not create a genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Here, Plaintiffs make only conclusory assertions without any competent evidentiary support for their theory that Dyno Nobel backdated the Ninth Amendment. In contrast, Defendants have filed an affidavit from Mr. Gleason, swearing under oath, that he signed the Ninth Amendment on behalf of Dyno Nobel on October 21, 2005. (R. at 133.) Additionally, the signed copy of the board minutes for October 26, 2005 shows that the board

ratified the Ninth Amendment at that meeting. (R. 379–81.) The certificate signed by Dyno Nobel on November 10, 2005 also states that the Ninth Amendment was ratified by the Board of Directors on October 26, 2006. (R. at 243.) Plaintiffs' conclusory allegations of backdating does not create a genuine issue of material fact, and the court finds that it is not improper for Dyno Nobel to use the Ninth Amendment to support its rejection of Plaintiffs' claims.

### 4. "Equity-Based Compensation"

Plaintiffs next argue that the Ninth Amendment pertained only to "equity-based compensation," and there is evidence suggesting payments for cancellation of the Management Warrants were not such. Specifically, Dyno Nobel announced that its shareholders had successfully completed the sale of all shares in the company to Macquarie on December 5, 2005. In that announcement, Dyno Nobel stated that "the net proceeds for your warrants were paid out to your relevant employer on the 2nd of December for further credit to you through your salary." (R. at 332.) Also, Mr. Hurley's compensation summary dated December 18, 2005 showed that the payments for cancellation of the warrants were categorized as "bonus payments." (R. at 334.) Plaintiffs contend that these examples show that Dyno Nobel should have treated the warrant cancellation payments as bonus payments included in calculating benefits under the Pension Plan, not "equity-based compensation" subject to the Ninth Amendment.

But these examples offered by Plaintiffs showing that Dyno Nobel characterized the warrant cancellation payments differently for other purposes does nothing to establish that the Ninth Amendment did not govern the treatment of those payments for purposes of calculating benefits under the Pension Plan, or that the Plan administrator's determinations under the Plan were arbitrary and capricious.

14

#### 5. Fiduciary Duties

Plaintiffs argue that Defendants breached their fiduciary duties under ERISA. As discussed below, Section 1109, establishing liability for breach of fiduciary duties, does not allow Plaintiffs to bring individual claims like the one here asserted.

Accordingly, the court grants Defendants' motion for summary judgment on Plaintiffs' first cause of action, and dismisses Plaintiffs' allegation that Defendants violated the terms of the Plan under 29 U.S.C. §1132(a)(1)(B).

### B. Allegation of Violations of ERISA's Anti-Cutback Provision

Plaintiffs contend that Defendants violated ERISA's anti-cutback provision. 29 U.S.C. § 1054(g). Under that provision, Defendants may not amend the pension plan to decrease the accrued benefits earned by the Plaintiffs. Plaintiffs here reiterate their argument that Defendants might have backdated the Ninth Amendment. Plaintiffs contend that they made their decisions to cancel their warrants and tender bonus payments prior to ratification and adoption of the Ninth Amendment, so the Ninth Amendment is not applicable, and should not have been used by the Plan administrator to reject Plaintiffs' claims. If this is so, Plaintiffs contend, their rights to receive the payments and obtain pensionable compensation based on these payments might have accrued prior to the passage of the Ninth Amendment. Plaintiffs argue that since their pensionable compensation might have accrued prior to the passage of the Ninth Amendment, Defendants' attempt to redefine those payments as non-pensionable compensation may have violated ERISA's anti-cutback provision. (R. at 292; *see also* Dkt. 47 at ¶¶73-78.)

As stated previously, Plaintiffs make only conclusory assertions without any support for their theory that Dyno Nobel backdated the Ninth Amendment. In contrast, Defendants have filed an affidavit from Mr. Gleason, swearing under oath, that he signed the Ninth Amendment

15

on behalf of Dyno Nobel on October 21, 2005. (R. at 133.) Also, the signed copy of the board minutes for October 26, 2005 shows that the board ratified the Ninth Amendment at that meeting. (R. 379–81.) And the certificate signed by Dyno Nobel on November 10, 2005 states that the Ninth Amendment was ratified by the Board of Directors on October 26, 2006. (R. at 243.)

Accordingly, the court finds that there are no genuine disputes of material fact sufficient to avoid summary judgment, and that the administrator's denial of Plaintiffs' claim – based on the allegations that Defendants violated ERISA's anti-cutback provision – was reasonable and sufficiently supported by facts. The court grants Defendants' motion for summary judgment on Plaintiffs' second cause of action, and dismisses Plaintiffs' allegation that Defendants violated ERISA's anti-cutback provision, 29 U.S.C. § 1054(g).

### C. Allegations of Violations of ERISA's Fiduciary Duties

Plaintiffs also argue that they are entitled to bring suit under 29 U.S.C. § 1132(a)(2), which provides that "[a] civil action may be brought . . . by a participant, beneficiary or fiduciary for appropriate relief under section 1109 of this title." Section 1109 in turn states that "[a]ny person who is a fiduciary with respect to a plan who breaches any responsibilities, obligations, or duties imposed upon fiduciaries . . . shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate[.]" 29 U.S.C. § 1109(a). These responsibilities, obligations, or duties imposed upon fiduciaries are further defined in 29 U.S.C. § 1104, which explains that "a fiduciary shall discharge his duties

with respect to a plan solely in the interest of the participants and beneficiaries and . . . in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D).

The Supreme Court has held that Section 1109 "and its companion remedial provision, subsection [1132(a)(2)] . . . were primarily concerned with the possible misuse of plan assets, and with remedies that would protect the entire plan, rather than the rights of an individual beneficiary . . . in this context 'other equitable or remedial relief' does not authorize any relief except for the plan itself." *Varity Corp. v. Howe*, 516 U.S. 489, 509 (1996) (citing *Mass. Mutual Life Ins. Co. v. Russell*, 473 U.S. 134 at 142-144 (1985)); *see LaRue v. DeWolff*, 552 U.S. 248, 256 (2008) (allowing an individual action for breach of fiduciary duty to go forward for a defined contribution plan, but distinguishing defined contribution plans from defined benefits plans); *see also Clark v. Feder. Semo & Bard, P.C.*, 736 F. Supp. 2d 222, 226 (D.D.C. 2010) ("*LaRue* held that for defined contribution plans, a plaintiff may bring a breach of fiduciary duty claim under section 1132(a)(2) even where the alleged misconduct only affects 'persons tied to particular individual accounts[.]' . . . But *LaRue*'s holding does not apply to defined benefit plans, the type of plan at issue here, and in *Russell*, on which this Court relied.").

In this case, Plaintiffs' attempt to assert individual claims under a defined benefits plan (not a defined contribution plan) by alleging that the Defendants breached their fiduciary duties under Section 1132(a)(2), Section 1109, and Section 1104. The Supreme Court is clear that these provisions do not contemplate individual claims for benefits under a defined benefits plan. Rather, these sections only allow Plaintiffs to bring claims for relief for the plan itself.

Accordingly, the court grants Defendants' motion for summary judgment on Plaintiffs' third cause of action, and dismisses Plaintiffs' allegation that Defendants violated ERISA's fiduciary duties under 29 U.S.C. § 1104.

### D. Equitable Relief

Plaintiff asks the court to enjoin Dyno Nobel's practice of failing and refusing to include the cancellation payments in its pension benefits calculations under Section 1132(a)(3) for the same reasons set forth in Plaintiffs' first, second, and third causes of action, namely, that Defendants' conduct (1) violated the terms of the pension plan; (2) violated ERISA's anti-cutback provisions; and (3) violated ERISA's fiduciary duties. *See* 29 U.S.C. § 1132(a)(3) ("A civil action may be brought . . . by a participant, beneficiary, or fiduciary to enjoin any act or practice which violates any provision of [ERISA], or the terms of the plan, or to obtain other appropriate equitable relief to redress such violations or to enforce any provision of [ERISA] or the terms of the plan.") On the other hand, Defendants argue that since Plaintiffs have a cognizable claim for recovery and enforcement of violations of ERISA and violations of the terms of the Pension Plan under Section 1132(a)(1)(B), injunctive relief under Section 1132(a)(3) is barred.

The court has already dismissed Plaintiffs' first three causes of action, finding that Defendants' refusal to include the cancellation payments in its pension calculation was reasonable and sufficiently supported by facts. In view of these dismissals and the fact that Plaintiffs have alleged no additional ERISA or Plan violations to support its request for injunctive relief under Section 1132(a)(3), the court finds that no relief, whether injunctive or otherwise, is available to Plaintiffs.

Accordingly, the court need not determine whether injunctive relief under Section 1132(a)(3) is barred because a cognizable claim otherwise exists under Section 1132(a)(1)(B). The court grants Defendants' motion for summary judgment on Plaintiffs' fourth cause of action,
18

and dismisses Plaintiffs' allegations that they are entitled to injunctive relief under 29 U.S.C. § 1132(a)(3).

### E. Ambiguous Language

Finally, Plaintiffs argue that the phrase "equity-based compensation" in the Ninth Amendment is ambiguous, requiring that the Ninth Amendment should be construed against Defendants. The Tenth Circuit has held that language like that contained in the Ninth Amendment should be interpreted based on the "common and ordinary meaning as a reasonable person in the position of the plan participant would have understood the words to mean." *Flinders v. Workforce Stab. Plan*, *Phillips Petrol.*, 491 F.3d 1180, 1194 (10th Cir. 2007). "A decision denying benefits based on an interpretation of an ERISA provision survives arbitrary and capricious review so long as the interpretation is reasonable." *Id.* at 1193. In addition, "if a plan provision is ambiguous, and the plan administrator adopts one of two or more reasonable interpretations, then the plan administrator's decision to deny benefits based on that interpretation survives arbitrary and capricious review." *Id.*

In this case, the court need not determine whether the language of the Ninth Amendment is ambiguous. It is enough that, as stated previously, the court finds the administrator's interpretation of the Ninth Amendment is reasonable and sufficiently supported by the facts. Accordingly, the court finds that the Plan administrator's decision to deny Plaintiffs' claim for benefits survives arbitrary and capricious review.

## CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' Motion for Summary Judgment. (Dkt. 83.) The court DENIES Plaintiffs' Motion for Rule 56(f) Continuance. (Dkt. 89.) Any remaining motions are rendered moot by these decisions. The court orders all parties

19

to bear their own respective attorneys' fees and costs.  The court orders the Clerk of Court to close the case.

SO ORDERED this 8th day of September, 2014.

BY THE COURT:

_____
ROBERT J. SHELBY
United States District Judge